E-FILED
Monday, 28 September, 2026 04:58:56 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| TAMMIE F. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04167-SLD-RLH |
| | ) | |
| FRANK J. BISIGNANO, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff Tammie F. appeals the decision of Defendant Frank Bisignano, the Commissioner of Social Security ("the Commissioner"), denying her benefits. Compl., ECF No. 1. Before the Court are Magistrate Judge Ronald L. Hanna's Report and Recommendation ("R&R"), ECF No. 20, recommending the Court affirm the Commissioner's decision, and Tammie's objection to the R&R, ECF No. 21. For the following reasons, Tammie's objection is OVERRULED and Judge Hanna's R&R is ADOPTED.

**BACKGROUND**[1]

In May 2021, Tammie applied for supplemental security income ("SSI") based on an alleged disability beginning February 20, 2009. After her claim was denied, first upon initial review and then again upon reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"), which occurred in November 2022. In a partially favorable written opinion issued on June 6, 2023, the ALJ concluded that Tammie "ha[d] been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on April 12, 2023." R. 242. Tammie

[1] Judge Hanna's R&R provides a detailed summary of the factual and procedural history of this case, including the ALJ's decision. *See* R&R 5–8. Unless otherwise stated, the facts recited here come from the administrative record. Social Security Tr., ECF Nos. 5–5-6. Citations to the record take the form R. __.

appealed, and the Appeals Council affirmed in part and reversed in part. It affirmed the ALJ's finding that Tammie's disability began April 12, 2023, but vacated the ALJ's finding that Tammie could work from her application date of May 7, 2021, through April 12, 2023, because of apparent conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles*. On remand, a different ALJ held a hearing and issued a written decision finding that Tammie was not disabled from May 7, 2021, until April 12, 2023. Tammie appealed, but the Appeals Council denied her request for review. She then filed a complaint with the Court. After reviewing both Tammie and the Commissioner's briefs, *see* Pl. Br., ECF No. 8[2]; Comm'r Br., ECF No. 16; Reply, ECF No. 19, Judge Hanna entered his R&R recommending that the ALJ's decision be affirmed. *See generally* R&R. Tammie objected to the R&R, *see generally* Obj. R&R, and the Commissioner timely filed his response, *see* Resp. Obj. R&R, ECF No. 23.

## DISCUSSION

### I. Legal Standard

#### a. Review of R&R

When the court refers a dispositive issue to a magistrate judge, the magistrate judge must "enter a recommended disposition." Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." *Id.* 72(b)(2). A district court reviews *de novo* any portion of the magistrate judge's recommended disposition that has been properly objected to. *Id.* 72(b)(3). "If no objection or only partial objection is made, the district

[2] Due to inconsistent pagination, the Court uses the green numbers generated by CM/ECF at the top of the filing rather than the page numbers at the bottom of the document.

court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**b. Appeal from the Social Security Administration ("SSA")**

The Commissioner's disability determination will be upheld so long as it is supported by substantial evidence and not the result of an error of law. 42 U.S.C. § 405(g); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The ALJ's explanation of how the evidence supports her conclusion must be "sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

A reviewing court will consider the entire record, but it will not "replace the ALJ's judgment with [its] own." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Its review "is limited also to the ALJ's rationales; [it will] not uphold an ALJ's decision by giving it different ground to stand upon." *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). As a result, the Commissioner's decision must "build an accurate and logical bridge from the evidence to her conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

**c. Disability Determination**

As relevant here, claimants are eligible for SSI benefits or disability benefits if they are disabled. 20 C.F.R. § 416.202(a)(3); *id.* § 404.315(a)(3). A disability is "the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §§ 416.905(a), 404.1505(a). The SSA has developed a five-step sequential evaluation process to determine whether someone qualifies as disabled. *See id.* § 416.920(a). First, the SSA determines whether the claimant engages in any substantially gainful activity; if so, she is not disabled. *Id.* § 416.920(a)(4)(i). Next, it considers whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for at least twelve months; if not, she is not disabled. *Id.* §§ 416.920(a)(4)(ii), 416.909. At the third step, the SSA determines whether the medical severity of the claimant's impairments satisfies enumerated criteria for a number of listed impairments. *Id.* § 416.920(a)(4)(iii); *see id.* Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets the listed criteria, or if a similar impairment is medically equivalent to the listed criteria, she is disabled. *Id.* § 416.920(a)(4)(iii). If not, the analysis continues. Before moving on to step four, the SSA determines the claimant's "residual functional capacity" ("RFC") to work "based on all relevant medical and other evidence in [her] case record." *Id.* § 416.920(e). At steps four and five, the SSA determines whether, given the claimant's RFC, she can still perform her past relevant work or make an adjustment to other work, respectively. *Id.* § 416.920(a)(4)(iv)–(v). If she can perform past work or make an adjustment to other work, she is not disabled. *Id.*

## II. Analysis

Tammie explicitly objects to some sections of the R&R in their entirety—such as all of its step three discussion—and in other places, raises line-by-line objections to the use and characterization of quotes, statements, and evidence, effectively objecting to entire sections. *See*

*generally* Obj. R&R.[3] The arguments Tammie raises are quite wide-ranging. In an effort to address all of Tammie's objections, the Court will, after briefly addressing a new procedural objection, review each section of the R&R. The Court will review the sections that have been objected to *de novo*, ensuring to construe Tammie's objections liberally. *See Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (noting that courts are required to construe a *pro se* litigant's brief liberally). It will review the remaining sections for clear error. *Johnson*, 170 F.3d at 739.

**a. Record**

At the outset, the Court addresses an objection raised for the first time in Tammie's objection to the R&R. She asserts "that the record provided to [her] by SSA is not numbered in the same way as the record the court and attorney have" such that "the citations are not matching." Obj. R&R 1. Tammie "did not discover the difference until [she] read" the Commissioner's brief. *Id.* Tammie also asserts that she "was not provided with exhibits past 19F." *Id.* The Commissioner responds that he "served Plaintiff with a copy of the transcript, which included exhibits 19F through 23F." Resp. Obj. R&R 1. On August 18, 2026, the Court directed the Commissioner to file a belated certificate of service explaining when and how he sent the transcript to Tammie. *See* Aug. 18, 2026 Text Order, ECF No. 25. The next day, the Commissioner filed a notice informing the Court that he originally sent the entire transcript, including exhibits, to Tammie via FedEx on November 25, 2025, and that he has now served her for a second time with the entire transcript, including exhibits, at an address which she confirmed to be her mailing address. *See generally* Not. Compliance, ECF No. 26. The Court is satisfied that Tammie was properly served because counsel for the Commissioner certified, pursuant to

[3] Due to inconsistent pagination, the Court uses the green numbers generated by CM/ECF at the top of the filing rather than the page numbers at the bottom of the document.

Federal Rule of Civil Procedure 11, that she mailed the entire transcript, including all exhibits, to Tammie.

**b. Threshold Issues (R&R 8–10)**

**i. First ALJ Decision**

Judge Hanna recommends finding that the first ALJ's decision is not at issue in this case. R&R 8–9. Tammie does not appear to object. *See generally* Obj. R&R. Thus, the Court reviews this for clear error. *Johnson*, 170 F.3d at 739. The Court sees none; therefore, the Court adopts the R&R's finding that only the August 2024 ALJ decision is before it.

**ii. Student Loan Discharge**

Judge Hanna recommends finding that "Tammie's student-loan discharge . . . has no bearing on whether the ALJ erred in finding Tammie not disabled." R&R 9–10. Tammie objects, arguing that "[i]n order to qualify for that discharge[,] a doctor, who was [her] long time, treating, primary care physician, had to certify that [she] was unable to participate in substantial gainful employment for a minimum of 5 years," and that her doctor's certification constitutes substantial evidence that she was disabled during the relevant time period. Obj. R&R 1–2. She distinguishes this from Judge Hanna's discussion of whether the determination of disability from another agency possesses evidentiary value in social security proceedings. *Id.* This distinction, however, fails. "A claimant . . . is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'" *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). That determination lies exclusively with the Commissioner. *Id.* (citing 20 C.F.R. § 404.1527(e)). And Judge Hanna is correct that determinations about disability made by other governmental agencies and nongovernmental entities are "not binding on [the SSA] and [are] not [its] decision about whether [a claimant] is disabled . . . under [its] rules." 20 C.F.R.

§ 416.904. As such, Tammie's objections to Judge Hanna's student loan discharge recommendation are overruled.

**c. The ALJ's Step Two Analysis (R&R 10)**

At step two, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for at least twelve months; if not, she is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. Judge Hanna recommends finding that, because the ALJ determined Tammie had six severe impairments, she "received 'as favorable a determination as can be made at step two.'" R&R 10 (quoting *Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015)). Tammie objects to Judge Hanna's determination that "[t]he fact that the ALJ did not find Tammie's arthritis, spondylosis, scoliosis, falls, PTSD, or other impairments severe was not prejudicial because, regardless, the ALJ was required to proceed to the next phase of the evaluation process, which the ALJ did." *Id.* (quotation marks and citation omitted); Obj. R&R 2.

Tammie argues that this is a "cherry-picking/ignoring substantial, material evidence issue" rather than one of "severity." Obj. R&R 2. She explains that the ALJ "didn't just say [the impairments] are not severe, she IGNORED them." *Id.* However, the step two analysis is inherently a question of severity. "[T]he step two determination of severity is merely a threshold requirement." *Curvin*, 778 F.3d at 648 (quotation marks omitted). Thus, "[a]s long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010); *see also Bowen v. Yuckert*, 482 U.S. 137, 149–50 (1987). Even if the ALJ had erred in not finding those impairments severe, it was harmless as she moved on to the rest of the analysis. *Curvin*, 778 F.3d at 648–49 (holding that "[t]he ALJ did not err at step 2 by finding that [the plaintiff's]

remaining impairments were not severe without first evaluating her symptoms and assessing her credibility," and that, "even if there were such an error at step 2, it would have been harmless because the ALJ properly considered all of [the plaintiff's] severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3"). And to the extent that Tammie's objection is that, holistically, the ALJ did not sufficiently consider these impairments, some were explicitly discussed at step two, and all were discussed in other steps of the ALJ's opinion. *See* R. 19, 27 (discussing arthritis); *id.* at 28–29 (discussing spondylosis); *id.* (discussing scoliosis); *id.* at 19, 25, 27–28 (discussing falls); *id.* at 20, 37, 41 (discussing PTSD).

As Judge Hanna's R&R illustrates, all that matters at step two is that there is *a* severe impairment. *See Curvin*, 778 F.3d at 649. The ALJ's step two analysis is more than sufficient.

**d. The ALJ's Step Three Analysis (R&R 11–16)**

At the third step, the SSA determines whether the medical severity of the claimant's impairments satisfy the enumerated criteria for a number of listed impairments. 20 C.F.R. § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App. 1. Judge Hanna recommends finding that there was no error requiring remand in the ALJ's analysis of (1) disorders of the skeletal spine and (2) fibromyalgia. R&R 11–16. Tammie objects to the entirety of Judge Hanna's review of the step three analysis because he failed to recognize that the ALJ "cherry picked her 'substantial evidence' to support a finding of not disabled" "with intention and malice to support a finding of not disabled."[4] Obj. R&R 2. The Court will review the ALJ's analysis of each listing and address Tammie's respective objections.

[4] This is a consolidation of Tammie's overarching objections to Judge Hanna's review of step three. Tammie specifically argues that Judge Hanna failed to recognize that the ALJ: (a) "cherry picked her 'substantial evidence' to support a finding of not disabled"; (b) "was patently wrong"; (c) "went out of [the] way to negate criteria that meets listing requirements"; (d) "ignored a whole line of material and substantial evidence to come to support a finding of

**i. Listing 1.15: Disorders of the Skeletal Spine**

In order to meet Listing 1.15, a claimant must provide, among other things, evidence of:

> [a]n inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device, that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand.

Listing 1.15(D)(2) (citations omitted). The ALJ concluded that Listing 1.15 was not met because "although [Tammie] complained of pain and used a cane and had some imaging deficits, she declined treatment, had EMGs that did not show radiculopathy, and had exams that were often unremarkable except for tenderness and slightly reduced strength." R. 21. Judge Hanna recommends finding that "[b]ecause the record did not substantiate Tammie's allegations that a cane was medically necessary, the ALJ reasonably concluded that Tammie did not satisfy Listing 1.15." R&R 13.

Tammie argues that Judge Hanna "erred when he ignored all of the ALJ's lies, mischaracterizations, manipulations and failures to provide a 'logical bridge' from the evidence to her conclusions." Obj. R&R 4. As an initial note, the Court does not understand why Tammie would object to Judge Hanna's *not* relying on statements by the ALJ which were, in her opinion, "lies, mischaracterizations, [and] manipulations." *Id.* Substantively, the Court is satisfied that the ALJ's Listing 1.15 analysis is supported by substantial evidence.[5]

---

not disabled"; (e) "did not evaluate the record as a whole as required by 20 CFR 404.1520(a)(3)"; and (f) "did each of these with intention and malice to support a finding of not disabled." Obj. R&R 2. Each of these arguments, in essence, is an assertion that the ALJ cherry-picked evidence and went against the weight of the evidence in finding that the severity of her medical impairments does not meet the listings.

[5] Tammie also asserts that the ALJ's statement that "there was 'no evidence showing disorders of the skeletal spine resulting in compromise of a nerve root'" was both "patently wrong" and "a malicious lie." Obj. R&R 3 (quoting R. 20). The quoted language, "disorders of the skeletal spine resulting in compromise of a nerve root," is the title of Listing 1.15, and here the ALJ was merely stating her ultimate conclusion that Tammie did not meet the criteria for Listing 1.15. *See* R. 20–21 (stating that "Listing 1.15 was not met or medically equaled because there is no evidence showing disorders of the skeletal spine resulting in compromise of a nerve root(s) by all of the following" and then listing all of the requirements of Listing 1.15). As the Court finds no reversible error in the ALJ's determination that Tammie's cane was not medically necessary, it can find no reversible error in the ALJ's determination that Tammie

On March 25, 2022, Tammie was prescribed a quad cane for lifetime use in order to reduce pain and stabilize joints, which would allow her to improve her posture and return to activities of daily living. R. 982. The prescription includes no explanation or context for what led the prescribing doctor to write it. *Id.* On September 2, 2022, Tammie first met with Tracy Burgard. *Id.* at 1095. Burgard noted that Tammie had a cane, stating that she "[u]ses a cane for walking or shopping cart, she gets a pinched nerve and her leg gives out. . . These are ongoing issues and . . . this is why she thinks disability is appropriate for her." *Id.* When they met again on October 4, 2022, for a follow-up, Burgard questioned the veracity of Tammie's disability and, among other things, stated that "[i]n the office [Tammie] walks with very minimal assistance of the cane and it appears to be more supportive than truly assistive." *Id.* at 1104. On November 1, 2022, another provider noted that Tammie walked slowly and with a cane. *Id.* at 1110. On November 17, 2022, Burgard reiterated her suspicion of Tammie's malingering and stated that Tammie "does have a cane in the office," upon which she "does not seem to rely heavily" for ambulation. *Id.* at 1119. She also noted that she could not find a prescription for the cane in the records, *id.*, although the prescription is included in the record before the Court, *see id.* at 982. The ALJ reviewed all of this evidence in determining that "clearly there is no medical necessity" for Tammie's cane, explaining that

> [a]lthough she reported needing a cane and had some appointments where she was using one, she walked unassisted during appointments, she did not report using an assistive device in her two function reports, the internal medicine consultative examiner stated that the claimant could walk unassisted, and one provider questioned multiple times whether the claimant needed a cane as the claimant appeared to use it for support rather than actual assistance.

---

does not meet the criteria for Listing 1.15, or in other words, does not meet the criteria for "disorders of the skeletal spine resulting in compromise of a nerve root." The Court declines to review all the other elements of Listing 1.15 based on such a vague and undeveloped argument when the ultimate outcome—affirming the ALJ's findings—would remain the same. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments . . . are waived.").

*Id.* at 32 (citations omitted); *id.* at 29 (acknowledging that Tammie was prescribed a cane).

The analysis of Tammie's cane is a bit more complicated than the ALJ presents it. The cane was not prescribed until March 2022, and mention of a cane does not appear elsewhere in provider notes until September 2022. The two function reports in which Tammie did not report use of an assistive device are dated July 16, 2021, *id.* at 467–68, and December 29, 2021, *id.* at 504–05. But Tammie noted in an appeal document dated July 19, 2022, that since her last disability report in November 2021, she had fallen six times and developed the need to use a cane. *Id.* at 519–28. As Tammie's circumstances had changed since those two function reports, the ALJ erred when she relied on them to support a finding that, for the entire time period under review, the cane was not medically necessary.[6] The onset of Tammie's cane usage presumably occurred sometime in early 2022, which means it is only appropriate to consider those function reports for the first portion of the time period in question.[7] However, the reliance on these function reports for March 2022 through April 2023 is a harmless error because ALJ's determination that Tammie's cane was not medically necessary is still supported by substantial evidence.

Tammie specifically objects to the ALJ's reliance on Burgard's notes about her cane. Obj. R&R 5–6. She asserts that Burgard never saw her walk into or out of the exam room, presumably implying that Burgard had no basis for knowing whether and to what extent Tammie used a cane for walking, and she takes issue with the distinction between supportive and assistive cane use that both Burgard and the ALJ draw. *Id.* at 5. Burgard's notes, which are evidence in

---

[6] The ALJ also exclusively cited evidence pre-dating Tammie's cane prescription to support the assertion that Tammie "did not consistently use one." R. 31 (citing *id.* at 812–20, dated August 21, 2021, and *id.* at 460–68, dated July 16, 2021). However, the ALJ did not exclusively rely on evidence pre-dating the alleged necessity of a cane for the determination that it was not medically necessary. The ALJ discussed and explained why she was unpersuaded by evidence from when Tammie began using the cane that it was medically necessary.

[7] Tammie objects to this several times throughout her brief, *see, e.g.*, Obj. R&R 4–5, but the Court only addresses it here.

the record, clearly discuss Tammie's cane usage. R. 1095, 1104, 1119. Tammie's argument does not undercut the evidence and furthermore, it is not this Court's role to reweigh evidence. Instead, this Court must ensure that the ALJ's decision is supported by the record. Burgard, in the record, recorded observations about Tammie's cane usage, and so the ALJ's reliance upon it is appropriate. And Burgard's notes clearly indicate that she thinks support is less necessary or helpful than assistance. Whether Tammie agrees with that distinction is irrelevant—clearly, Burgard found it notable, as did the ALJ. Tammie also disagrees with how the ALJ interpreted Burgard's quotes about her cane usage, arguing they support its necessity rather than undercut. Obj. R&R 6. Again, the Court cannot say that the ALJ erred in interpreting these as not supporting medical necessity, nor can it reweigh the evidence.

Tammie next argues that the ALJ ignored her cane prescription. *Id.* The ALJ did not ignore Tammie's cane prescription—she mentions it multiple times. *See* R. 25 (noting that Tammie "was prescribed a cane, and she used that"); *id.* at 29 ("[T]he claimant's orthopedic provider put in an order for a durable medical equipment (DME) as being medically necessary. . . ."). That the ALJ discussed the prescription in parts of her opinion other than the step three analysis does not mean it was not properly considered, *see Zellweger v. Saul*, 984 F.3d 1251, 1254–55 (7th Cir. 2021), and a cane prescription does not inherently mean the cane was medically necessary, *cf. Arricka C.T. v. Comm'r of Soc. Sec.*, No. 1:21-cv-01115-JEH, 2022 WL 16707284, at *4–5 (C.D. Ill. Aug. 30, 2022).

Tammie also argues that "the ALJ ignored the MRI . . . diagnosis of severe spinal arthritis, spondylosis, scoliosis, spinal stenosis, and extruding, protruding & bulging discs" and "chose to use degenerative disc disease to mislead anyone reviewing her decision" because "[c]hoosing words that seem less severe is part of [the ALJ's] intentional misconstruing of facts

to manipulate." Obj. R&R 3 (discussing the MRI report at R. 978–80). This MRI impression found "[s]coliosis, spondylosis and disc protrusions and extrusions. Multilevel spinal, lateral recess and neuroforaminal stenosis . . . . Spinal stenosis is most marked at L4-5 (moderate). No evidence of fracture, subluxation, stress response or spondylolysis." R. 979. The ALJ described this MRI as "show[ing] scoliosis, spondylosis, and multilevel disc protrusions and extrusions, with multilevel stenosis." *Id.* at 29. That the MRI is not mentioned in the ALJ's step three analysis is insignificant. *See Zellweger*, 984 F.3d at 1254–55. The only differences between the ALJ's and Tammie's descriptions of the MRI are that: 1) Tammie includes "severe spinal arthritis" and the ALJ does not; and 2) the ALJ describes the disc protrusions as "multilevel disc protrusions and extrusions," R. 29, while Tammie describes them as "extruding, protruding & bulging discs," Obj. R&R 3. Spondylosis, which the ALJ notes was shown on the MRI, R. 29, is a type of arthritis. And the ALJ's description of the disc protrusions is plainly neither a mischaracterization nor a misconstrual.

The ALJ "undeniably considered the medical documentation" regarding Tammie's cane, including the prescription, and "logically explained how the inconsistencies" in the record "precluded a finding that [Tammie's] cane was medically necessary." *Arricka C.T.*, 2022 WL 16707284, at *4–5 (concluding that an ALJ's finding that a prescribed cane was not medically necessary was supported by substantial evidence when he reviewed conflicting medical documentation and the claimant's use of the cane). A reviewing court "may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Accordingly, the Court agrees with Judge Hanna that the ALJ's determination that

Tammie does not meet the criteria for Listing 1.15 is supported by substantial evidence and that the ALJ builds a logical bridge between the evidence and her conclusion.[8]

This section of the R&R also includes a footnote addressing an exhibit attached to Tammie's reply brief, to which Tammie also objects. *See* Obj. R&R 3. The R&R finds the exhibit unpersuasive because "[t]he question is not whether this Court—reviewing the record with fresh eyes—would have reached the same conclusion as the ALJ," but "whether the ALJ's analysis was supported by such relevant evidence as a reasonable mind might accept as adequate." R&R 13 n.6 (quotation marks omitted) (discussing Legal Criteria & Evidence Citations, Reply Ex. 1, ECF No. 19-1). Tammie argues that she is "not asking the court to evaluate [her] disability with fresh eyes," but is instead "providing the evidence to prove [she] meet[s] the criteria to show how the ALJ manipulated & mischaracterized evidence and ignored a whole line of evidence supporting a disability." Obj. R&R 3 (emphasis omitted). Even if the Court accepts without deciding that Tammie is not asking the Court to decide anew whether the listing is met, no analysis would be altered. In the exhibit, Tammie identifies evidence she believes supports each part of her claim and, in her objection, she indicates that she was attempting to show how the ALJ ignored or mischaracterized that evidence. *See* Obj. R&R 3. However, the Court has already found that the ALJ's determination that a cane was not medically necessary was supported by substantial evidence, precluding application of Listing 1.15.

[8] Tammie also argues that the "ALJ went out of her way to claim the issues with [Tammie's] right extremities aren't severe enough to prevent [her] from using them." Obj. R&R 7. The Court need not reach this argument, though, because Listing 1.15 requires both an inability to use one hand *and* the medically-necessary use of an assistive device. Because the Court finds that the ALJ's conclusion that Tammie's use of a cane was not medically necessary is supported by substantial evidence, it is irrelevant whether she was able to use her right extremity.

**ii. Listing 14.09: Fibromyalgia**

The ALJ considered Listing 14.09(D) as the equivalency for Tammie's fibromyalgia, pursuant to SSR 12-2p. Listing 14.09(D) requires:

> [r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

A marked limitation "interferes seriously" with the claimant's "ability to function independently, appropriately, and effectively." 20 C.F.R. § 404, Subpt. P, Appx. 1, Listing 14.00(I)(5).

The ALJ determined that the record did not establish marked limitations and, "although she reported having widespread pain and other factors under SSR 12-2p, she had exams without tenderness or synovitis, she was able to do some physical therapy, and she did not receive much treatment besides medication." R. 21. Judge Hanna recommends affirming the ALJ's determination that Tammie's fibromyalgia is not a medical equivalent to Listing 14.09(D). R&R 14–16. As a reminder, Tammie argues that the ALJ "cherry picked her 'substantial evidence' to support a finding of not disabled" "with intention and malice to support a finding of not disabled." Obj. R&R 2.

**1. *Molly K. v. Saul***

Tammie frequently cites *Molly K. v. Saul*, No. 18 C 3415, 2019 WL 3857885 (N.D. Ill. Aug. 16, 2019), to support her objection to the ALJ's fibromyalgia analysis.[9] *See, e.g.*, Obj. R&R 5, 8, 27. *Molly* is useful in evaluating Tammie's fibromyalgia, but it is not factually analogous. Most significantly, the ALJ in *Molly* never discussed SSR 12-2p, *Molly*, 2019 WL

---

[9] Tammie also takes issue with Judge Hanna's determination that *Molly* is distinguishable from her own case. Obj. R&R 27. The Court addresses that objection in this discussion of *Molly*.

3857885, at *5, whereas Tammie's ALJ clearly proceeded with the fibromyalgia step three analysis under Listing 14.09(D) because of SSR 12-2p, *see* R. 21.

Additionally, the *Molly* ALJ overlooked four elements "that were crucial to a proper evaluation of fibromyalgia," *Molly*, 2019 WL 3857885, at *5, which Tammie's ALJ considered. First, she "did not account for Claimant's ongoing—and extensive—need for pain medications and muscle relaxants." *Id.* Molly had at least sixteen different relevant prescriptions, all of which were overlooked by the ALJ, except for "noting that Claimant stated on one occasion that Norco was helpful for pain." *Id.* Tammie's ALJ, in contrast, repeatedly discussed Tammie's prescriptions and pain management measures. *See, e.g.*, R. 20 (noting a 2020 prescription for chronic pain syndrome and medical marijuana usage for pain management); *id.* at 25 (discussing the efficacy and usage of Norco, Gabapentin, Toradol, and other medications for pain management).

Second, "the [*Molly*] ALJ failed to account for the symptoms of fibromyalgia that SSR 12-2p directs adjudicators to consider"—"fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Molly*, 2019 WL 3857885, at *6 (quotation marks omitted). Tammie's ALJ discussed evidence of each of these except for irritable bowel syndrome. *See, e.g.*, R. 32 ("[S]he denied having fatigue" and "[o]ther examinations do not indicate any indication of significant fatigue."); *id.* at 26–28 (further discussing fatigue and waking unrefreshed); *id.* at 35 (noting Tammie reported memory and concentration issues which were not corroborated by exams); *id.* at 36–37 (discussing conflicting self-reports of depression and anxiety). And Tammie's ALJ explicitly addressed these symptoms in relation to her analysis of fibromyalgia. *Compare id.* at 31–33 (discussing inconsistencies among fibromyalgia symptoms, including difficulty sleeping and fatigue,

memory issues, and lack of restful sleep), *and id.* at 35–36 (discussing how documentation about, among other things, memory, anxiety, and depression lack "consistent reporting of fibromyalgia flares"), *with Molly*, 2019 WL 3857885, at *6 ("The ALJ discussed Claimant's cognitive issues, anxiety and depression as part of listings 12.04 and 12.06 but did not address its relation to fibromyalgia[, which] suggests that the ALJ did not recognize the link between these symptoms and . . . [fibromyalgia].").

Third, "the [*Molly*] ALJ ignored everything that Claimant stated on [the fluctuating nature of her fibromyalgia] and did not address the possibility that her condition might have fluctuated over time," which "demonstrate[d] both a failure to consider all of the relevant evidence and a basic misunderstanding of the symptoms." *Id.* Tammie's ALJ, in contrast, addressed the fluctuating nature of fibromyalgia with her repeated discussion of Tammie's fibromyalgia "flareups." *See, e.g.*, R. 25, 26, 31.

Fourth and finally, "the [*Molly*] ALJ failed to determine at Step 3 whether Claimant's fibromyalgia medically equaled a listing." *Molly*, 2019 WL 3857885, at *7 (noting "that the ALJ stated in broad terms at Step 3 that Claimant 'does not have an impairment or combination of impairments' that meet or equal a listing," which "is ordinarily enough" but because of "the ALJ's failure even to cite fibromyalgia at Step 3" and "to address key components" of fibromyalgia, such broad statement was insufficient). Once again, Tammie's ALJ did not repeat the error of *Molly*'s ALJ. True, the ALJ opened her step three analysis with a blanket statement that Tammie "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments," but she then conducted a thorough analysis, including explicitly reviewing Listing 14.09 as the equivalency for fibromyalgia. R. 20–24.

In conclusion, the ALJ clearly and unequivocally conducted a more thorough and appropriate analysis of Tammie's fibromyalgia and its symptoms. While *Molly* is useful in illustrating what an ALJ should consider, it does not, as Tammie argues, support remanding this case for further proceedings. In fact, comparing the ALJ's opinion with *Molly* bolsters this Court's conclusion that the ALJ's review of Tammie's fibromyalgia was supported by substantial evidence and without legal error.

**2. Marked Limitations Analysis**

The Court now reviews the ALJ's determination that Tammie did not have any "marked" limitations in the enumerated functions, bearing in mind Tammie's standing objection to cherry picking. The ALJ considered the impact of Tammie's combined impairments on her functional limitations, including in a detailed "paragraph B" analysis of whether her combined impairments created marked limitations in "a broad area of functioning," including the functions enumerated in Listing 14.09(D). R. 21–23. That the discussion of her impairments considered them together rather than in isolation is proper. *See Sullivan v. Zebley*, 493 U.S. 521, 531–32 (1990) (noting that a "combination of impairments" may be reviewed to determine whether a claimant's condition is medically equivalent to a listing). And while true that the step three analysis of Tammie's physical, fibromyalgia-related limitations was somewhat minimal, the discussion of her limitations consistently included the parenthetical that Tammie could perform a task "within her physical limitations." R. 21–23. Moreover, the ALJ explicitly incorporated her paragraph B discussion into the analysis of Listing 14.09(D). *Id.* at 21.

The ALJ discussed Tammie's concerns with completing daily activities, maintaining social functioning, and completing tasks in a timely manner—focusing more specifically on the effect her physical impairments caused on these abilities—when she conducted the RFC

analysis. *Id.* at 25–27. This too is acceptable. *Zellweger*, 984 F.3d at 1254 ("[N]othing . . . prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision."). The ALJ also stated that "[t]he listings were considered, but the medical evidence establishes that the claimant's impairments, considered individually and in combination, fail to meet or medically equal the relevant listings." R. at 20. This statement, in conjunction with the ALJ's explicit identification of fibromyalgia and Listing 14.09, her paragraph B analysis, and her RFC discussion, is "more than a perfunctory analysis" and sufficient. *Jeske*, 955 F.3d at 588 (quotation marks omitted); *Molly*, 2019 WL 3857885, at *7 (citing *Williams v. Colvin*, No. 15 C 7011, 2016 WL 6248181, at *9 (N.D. Ill. Oct. 25, 2016)).

And even if the ALJ's discussion of Tammie's limitations was insufficient, the ALJ provided a thorough analysis of the evidence and explained her reasoning for not finding that the record supported finding that Tammie's fibromyalgia symptoms medically equaled "[r]epeated manifestations of inflammatory arthritis, with at least two constitutional symptoms or signs," Listing 14.09(D). *See* R. 33 (outlining various reasons for believing that Tammie's fibromyalgia-related reports of pain and flares were exaggerated and unsupported by the record). Therefore, the Court cannot disagree with the ALJ's conclusion that Tammie's fibromyalgia did not medically equal Listing 14.09(D).

**e. Residual Functional Capacity Assessment**

Tammie raises a plethora of objections to Judge Hanna's review of the ALJ's RFC assessment, as well as his resolution of her briefed arguments. *See generally* Obj. R&R. As a reminder, the SSA determines a claimant's RFC to work "based on all the relevant medical and other evidence in [her] case record" if she is not already determined to be disabled. 20 C.F.R.

§ 416.920(e). At steps four and five, the ALJ applies the claimant's RFC to consider whether she can still perform her past relevant work or make an adjustment to other work, respectively. *Id.* § 416.920(a)(4)(iv)–(v). If she can perform past work or make an adjustment to other work, she is not disabled. *Id.*

**i. The ALJ's Residual Functional Capacity Assessment (R&R 16–19)**

The ALJ concluded that Tammie was not as limited in her capacities as she claimed to be. R. 26–38. Judge Hanna recommends affirming this finding. R&R 19. Tammie raises a plethora of objections, which the Court now addresses in turn. *See* Obj. R&R 7–21.

She argues that the ALJ "committed fraud" and "lied about the results of an exam that did not happen," *id.* at 7–8, because the ALJ characterized a May 2020 remote video visit as revealing "no deficits in [Tammie's] neck, back, extremities, musculoskeletal system, and neurological system," R. 26. Because this is premised on a lie, she argues, there can be no logical bridge. However, this objection combines the ALJ's discussion of two different appointments. Tammie had a virtual May 7, 2020 appointment, *id.* at 787–90, the record of which the ALJ described as showing "no exam deficits," *id.* at 26. She also had a July 10, 2020 emergency room visit, *id.* at 842–43, which the ALJ described as "show[ing] no distress and no deficits in with her neck, back, extremities, musculoskeletal system, and neurological system," *id.* at 26. Tammie's May 7 appointment was virtual and the record of the appointment does not include the phrase "exam deficits." *Id.* at 787–90. It discusses chronic pain flares, struggles with breathing due to a panic attack and allergies, and elevated blood pressure. *Id.* at 788. It also notes the provider's objective findings as to Tammie's psychiatric and respiratory systems, and her head, eyes, ears, nose, throat, and neck, which were all fairly normal. *Id.* at 789. While the Court agrees with Tammie that the record does not explicitly state she had "no exam deficits,"

that does not mean the ALJ committed fraud, lied, or failed to create a logical bridge in her RFC analysis. It is, at worst, a slight mischaracterization of the appointment notes. The ALJ is not lying—there was no note of exam deficits—and this does not eliminate the logical bridge the ALJ extensively built between the evidence and her determination of Tammie's RFC. Moreover, the record from Tammie's July 2020 visit reflects exactly what the ALJ stated. *Id.* at 843. Therefore, this objection is overruled.

Tammie regularly objects to the way in which Judge Hanna selects and crops his quotations. *See generally* Obj. R&R. At times, she argues he is cherry picking by leaving out portions of the ALJ's opinion in which the ALJ misrepresents something from the record, *see, e.g.*, *id.* at 14 (objecting to Judge Hanna leaving out the sentence "However, she denied having neurological complaints" because she argues the ALJ misconstrued her statement that she did not have a headache); *id.* at 8 (objecting to R&R 18's quote of R. 26–27), and at others she argues he is cherry picking by leaving out portions of quotations which materially change the meaning or context of the quotations, *see, e.g.*, *id.* at 11–12 (objecting to Judge Hanna's leaving out the ALJ's discussion of exam findings and reported physical symptoms when reviewing the activities of daily living ("ADL") analysis). Cherry picking can be a serious concern; however, in social security cases, "cherry-picking" refers to an ALJ's inability to only discuss evidence favorable to her determination, not to a reviewing court's quotations of the ALJ's opinion. *See, e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Denton v. Astrue*, 596 F.3d 419, 424–25 (7th Cir. 2010). Moreover, when preparing R&Rs, Judge Hanna must necessarily choose where to begin and end his quotations.

Tammie raises several objections based on a specific line of the ALJ's opinion, which Judge Hanna quotes in his R&R.[10] The ALJ wrote: "[Tammie] reported being able to (when her pain and fatigue were not preventing her), feed herself, feed her dog . . . ." R. 26–27. She argues that this quotation establishes the ALJ's knowledge that her pain and fatigue prevented completion of ADLs. Obj. R&R 8. It is true the quote shows that the ALJ recognized that fibromyalgia's severity can ebb and flow (as Tammie agrees the ALJ must consider), but it also shows that Tammie's reported pains and limitations are not supported by the record. Tammie has repeatedly stated that she can care for herself, she lives independently, and although she may not be able to complete all tasks in as timely a fashion as she prefers, she herself notes that she does not have assistance at home. *See, e.g.*, R. 809. Tammie further argues that this quotation shows that the ALJ did not properly evaluate fibromyalgia, Obj. R&R 8, which the Court has already addressed, *see supra* Section II(d)(ii).

Tammie next argues that this quote shows that the ALJ did not build a bridge from the ADLs to the light work determination. Obj. R&R 9. She places much emphasis on her ability to complete just one ADL per day and argues that the necessary nature of these activities renders it illogical to consider them in determining her work capacity. *Id.* at 8–9. Once again, the amount of ADLs Tammie reports being able to complete (one a day) is inconsistent with her reports of complete debilitation. And, while true that an ALJ should not "plac[e] undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home," *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006), she "can appropriately consider a claimant's daily activities when assessing [her] alleged symptoms," *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (citing 20 C.F.R. § 404.1529). Here, the ALJ relied upon Tammie's

[10] This is also one of the quotes to which Tammie objects based on how Judge Hanna crops it. *See* Obj. R&R 8.

reported ADLs to discredit her reported subjective symptoms and then determined Tammie's RFC based upon the remaining credited symptoms. *See* R. 32–33. This comports with SSA guidelines, *see* SSR 16-3p, 2017 WL 5180304, at *10–11, and builds a logical bridge.

Tammie takes issue with the ALJ's reliance on mental health records to determine her physical abilities, *see, e.g.*, R. 27 (citing *id.* at 808–10), arguing it is illogical. Obj. R&R 11. But it is proper for the ALJ to utilize any statements within the record about Tammie's limitations to assess the nature of her subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).

Tammie raises several objections to the ALJ's discussion of her medication usage. She first objects to the ALJ's characterization of her usage as medication noncompliance. Obj. R&R 15 (discussing R. 28, 850). She argues that the ALJ's interpretation of the noted noncompliance *could* be incorrect but identifies no evidence to suggest that the ALJ went against the weight of the evidence in her interpretation. *Id.* Second, Tammie repeatedly objects to how the ALJ characterizes her Norco use. *See, e.g.*, Obj. R&R 16–17. To the extent the opinion suggests her Norco use or possession was improper, *see* R. 31, it was supported by the record. *See, e.g.*, *id.* at 1119 (noting that Tammie reported being "taken off of the Norco, but states she is taking the norco" and "has a 'stock pile' of Norco and this is not prescribed for her"); *id.* at 785 (noting that Tammie should decrease her Norco use). Neither of these arguments are persuasive; the ALJ's determinations were sufficiently supported by evidence in the record.

Finally, Tammie raises a slew of objections regarding the sufficiency of the ALJ's evidence and analysis of Tammie's fibromyalgia and the ways in which it impacts her RFC. Obj. R&R 17–21. That fibromyalgia's fluctuating and subjective nature must be considered does not mean that an ALJ is required to accept as true all of a claimant's symptoms. Rather, an ALJ

must address the claimant's statements, explain why she is unconvinced, and support her determination with evidence in the record. SSR 16-3p, 2017 WL 5180304, at *10–11. The ALJ has done so, and the Court has found no reversible error. *See supra* Section II(d)(ii) (reviewing the ALJ's Listing 14.09 analysis).

In conclusion, the Court agrees with Judge Hanna's recommendation that there are no reversible errors in the ALJ's RFC analysis.

**ii. Tammie's Arguments (R&R 19–26)**

**1. Insulin Resistance**

In her initial brief, Tammie complains that the ALJ failed to discuss her insulin resistance. Pl. Br. 3. Judge Hanna recommends finding that the error was harmless because Tammie points to no evidence about the impact of her insulin resistance. R&R 20. Tammie objects to Judge Hanna's determination that "ignoring [her ] insulin resistance is harmless error." Obj. R&R 21–22. Despite the R&R making no mention of *diabetes*, Tammie first argues that "all of the ALJ's conclusions that cited diabetes are inaccurate because [she] did not develop type 2 diabetes until 2025." *Id.* at 21 (emphasis omitted). Tammie did not raise this argument in her briefing before Judge Hanna, *see generally* Pl. Br., and it is therefore waived. Even if the Court were to consider this on its merits, the ALJ only briefly mentioned diabetes while she conducted the step two severity analysis, concluding that Tammie's "diabetes mellitus (DM) [was] non-severe." *See* R. 18. The ALJ noted that "[a]lthough [Tammie] was prescribed medication for DM, it was stable with medication despite her not consistently taking her medication, she denied being diabetic, and she was noted as having prediabetes and DM without complication." *Id.* (internal citations omitted). The ALJ cited record evidence from 2021 and 2022 that indeed showed that Tammie had a history of prediabetes and was on Metformin for

prediabetes, *id.* at 832, that Tammie had "Type II diabetes" that was "[s]table at th[e] time with current medications," but that she did "not always take all of her medications as directed," *id.* at 1095; that Tammie "denie[d] being a diabetic," *id.* at 1136; and that Tammie had prediabetes, *id.* at 1207. The record referred to diabetes and prediabetes, so the Court fails to see how the ALJ erred in discussing it. Moreover, the Court fails to see how any error in discussing diabetes could be prejudicial as the ALJ concluded that the impairment was non-severe.

Tammie also objects to this paragraph because she believes that the ALJ erred in ignoring the side effects of Metformin, a prescription for Tammie's insulin resistance (or prediabetes, per the record), because medication side effects must be considered under fibromyalgia analysis. Obj. R&R 21–22. The Court understands Tammie's argument to be that the ALJ erred in failing to consider the side effects of Metformin generally, *see* Pl. Br. 15 (raising her objections about Metformin alongside other arguments about medication), especially considering that Tammie does not allege that she took Metformin for fibromyalgia symptoms. However, Tammie does not cite to anywhere in the record that shows she complained of side effects from Metformin either in the opening brief, Pl. Br. 15, or in the objection, Obj. R&R 21–22. By the Court's review, Tammie only mentions Metformin's side effects in her written communications with the SSA, *see, e.g.*, R. 485, 595, and never mentions it to her providers. In fact, she routinely denied experiencing diarrhea when asked by doctors, even while taking Metformin. *See, e.g.*, *id.* at 628–31 (noting no reports of diarrhea and a Metformin prescription). The Court need not marshal the evidence to support Tammie's argument.

**2. Subjective Symptom Evaluation**

Judge Hanna discusses Tammie's objection to the ALJ not crediting her and her sister's testimony about her limitations. R&R 20. He recommends finding that the ALJ sufficiently

explained her "specific reasons" for discounting their testimony "and supported them with substantial evidence."[11] *Id.* (quotation marks omitted). Tammie objects to the whole paragraph, arguing that there is not substantial evidence to support the ALJ's determination. Obj. R&R 22. For the reasons discussed throughout this order, the ALJ's conclusions were sufficiently explained and supported by substantial evidence. As Judge Hanna noted, that Tammie disagrees is, while unfortunate, entirely irrelevant to the ALJ's decision.

**3. Mask Mandates**

Judge Hanna next addresses Tammie's argument that she could not work during the relevant time period because the mask mandate and her doctor's note that she could not use a mask meant there were no jobs available to her. R&R 20–21. Judge Hanna recommends rejecting this argument because the vocational expert stated the jobs he considered did not require masks and Tammie did not object to that testimony at the hearing. *Id.* at 21. Tammie objects to the entire paragraph, arguing that Judge Hanna erred because executive orders "carry the force of law," so vocational expert testimony that "jobs did not require masks is not only factually implausible" but "patently wrong" in light of Illinois's executive order on masks during the COVID-19 pandemic. Obj. R&R 22 (quotation marks omitted). First and foremost, the analysis at steps four and five considers jobs within the national economy, not the state economy.

---

[11] The Court notes that the language Judge Hanna uses appears to predate implementation of SSR 16-3p. *See* R&R 20 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941–42 (7th Cir. 2002)). SSR 16-3p, effective March 28, 2016, implemented different wording than the prior SSR on point. *See Michelle L. M. v. Kijakazi*, No. 2:22-cv-00151-MKK-JMS, 2023 WL 3835583, at *7 n.3 (S.D. Ind. June 6, 2023). SSR 16-3p "requires an ALJ to assess a claimant's subjective symptoms rather than assessing her 'credibility,'" in an effort to emphasize that "the 'subjective symptom evaluation is not an examination of an individual's character.'" *Id.* (quoting SSR 16-3p, 2017 WL 5180304, at *2); *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants . . . ." (emphasis in original)). Cases predating the language shift, though, are still frequently cited by the Seventh Circuit when reviewing an ALJ's credibility assessment of a claimant's symptoms. *See, e.g.*, *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); *Deborah M. v. Saul*, 994 F.3d 785, 789–91 (7th Cir. 2021).

20 C.F.R. § 416.960(b)–(c). There was no national mandate requiring everyone to wear masks, and so that Illinois required masks does not meaningfully impact the step four and five analysis. Moreover, the Illinois mandate allowed for medical exceptions, for which, based on her allegations, Tammie would presumably qualify. R. 677 (doctor's note from Tammie's primary care physician indicating that Tammie "has medical conditions that are exacerbated by the use of facial masks" and requesting accommodations for Tammie). Additionally, the ALJ reviewed the vocational expert's testimony and found that he "reasonably explained his methodology and job numbers." *Id.* at 43–44; *id.* at 32 n.4. This Court's role is not to reweigh the evidence, but to ensure that the ALJ's conclusions are founded and explained. Here, the ALJ explained why she found the vocational expert's testimony persuasive, and the Court sees no error.

**4. Medical Marijuana**

Judge Hanna next addresses Tammie's argument that she could not work because medical marijuana, the only medication effective for her pain, was prohibited by employers. R&R 21–22. He recommends rejecting this argument as a basis for remand because Tammie took various other medications and participated in physical therapy for pain management and Tammie's declination of treatment undercuts the severity of her symptoms. *Id.* Tammie objects to the whole paragraph. Obj. R&R 22. She first argues that there is no logical bridge for viewing her "unwillingness to seek other forms of treatment as evidence that her symptoms were not as severe as she alleged." *Id.* at 22 (quotation marks omitted). However, ALJs are directed to consider the type of treatment, including medication, that a claimant has received as a factor to consider in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *8.

Tammie objects to the assertion that she declined treatment. Obj. R&R 23. She argues that the document upon which the ALJ relied to support finding that Tammie declined treatment was not actually an instance of declining medications. *Id.* To support the conclusion that Tammie often declined treatment, the ALJ cites notes from an emergency room visit on December 11, 2021, that state, among other things, that Tammie was "unsure if she took" her blood pressure medication that day. *See* R. 31 (citing *id.* at 848). The Court fails to see how this supports the ALJ's conclusion that Tammie often declined treatment for her pain. Likewise, the ALJ cited a record from a psychiatry intake evaluation in which the provider notes that "Tammie declines medication," that Tammie "states she has had all of the side effects of all the meds she has been on in the past," and that Tammie "prefers to try natural remedies." *Id.* at 1099 (quotation marks omitted). Again, the Court fails to see how Tammie declining to take psychiatric medications is probative of whether her pain and physical limitations are as bad as alleged.[12]

However, the ALJ also cited records that support her conclusion. For instance, the ALJ cited a record that Tammie reported she was "[s]leeping only 4 hours per night and [wa]s restless . . . due to pain and possibly anxiety" but that she did not "think she need[ed] treatment for this at this time." *Id.* at 1119. In the same record, Tammie's provider noted that Tammie stated "that she has problems with different manufacturers of medications" and was "hesitant to start any new medications." *Id.* The ALJ also cited a record that notes that Tammie had not made an appointment with rheumatology despite having a referral. *Id.* at 1153. Ultimately, Tammie's declination of treatment and failure to take medication was not the only basis on which the ALJ

---

[12] Tammie also argues that it is "completely illogical to conclude that [she] do[es] not need medical cannabis for pain because [she] declined psych medications." Obj. R&R 23 (emphasis omitted and capitalization altered). However, the ALJ never concluded that Tammie did not require medical cannabis to manage her pain, *see generally* R. 15–45, so the Court addresses this no further

supported finding that Tammie's pain and limitations were not as significant as alleged—the ALJ also explained that Tammie had access to Norco, she did not report side effects with Gabapentin or other medications, she did not seek out treatment often through the pandemic despite seeing mental health providers, she was doing well in physical therapy, her medical records did not show significant deficits, she reported doing significant activities of daily living, and many providers questioned the reliability of her reports.

Tammie asserts that it is illogical to characterize medical cannabis as a conservative treatment; therefore, Judge Hanna's statement that adverse credibility findings may be based on conservative treatment is improper. Obj. R&R 23. Despite Tammie's argument, prescribing medical cannabis for pain treatment is consistently recognized as a conservative treatment. *See, e.g.*, *Joel K.R. v. Kijakazi*, No. 21 C 1905, 2023 WL 2646722, at *5 (N.D. Ill. Mar. 27, 2023) ("Plaintiff also received conservative treatment consisting only of home physical therapy exercises and medication [including medical cannabis] . . . . "); *see also Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (describing pain medication and physical therapy as conservative treatment for pain). And Tammie's argument that she was not prescribed any pain medication—she argues that her Gabapentin prescription was for restless leg syndrome rather than pain, Obj. R&R 23—is unsupported by the record. The ALJ identified that her Gabapentin was prescribed for fibromyalgia and neuropathy, *see, e.g.*, R. 29, which is plainly supported by the record, *see, e.g.*, *id.* at 1136 (identifying that Tammie has been diagnosed with fibromyalgia and prescribed Gabapentin but merely "believes" she has restless leg syndrome). The Court is also perplexed by the argument that Tammie was never prescribed pain medication because Norco, the use and possession of which Tammie has spent significant time defending, is a strong prescription painkiller which she was indisputably (at one time) prescribed and continued to take. As such,

the ALJ's conclusion that she was, in fact, prescribed pain medications is supported by the record.

Tammie also argues that the ALJ never stated Tammie "had ample Norco to relieve her pain" the way Judge Hanna says the ALJ did. Obj. R&R 22 (discussing R&R 21). Judge Hanna is quoting this statement from the ALJ's decision: "The claimant admitted at the hearing that Norco was effective for her pain and that she could not obtain it from providers, yet *by her own report* she had ample Norco to relieve her pain." R. 31 (emphasis added). Tammie raises a nonsensical argument that "[t]his is defamation per se as the ALJ keeps accusing [her] of a crime [she] did not commit." Obj. R&R 22. There are several issues with this. First, her initial objection is that the R&R includes something which the ALJ never represented. Then, it morphs into accusing the ALJ of defamation for implying that she took unprescribed Norco. These are fundamentally at odds with each other. And even if they were not inconsistent, the objection has no grounds. The record states that Tammie possessed Norco in multiple places, including by her own admission. *See, e.g.*, R. 757, 1119. That Tammie does not appreciate the wording the ALJ or Judge Hanna used in describing her possession of Norco is not an error, let alone a reversible one. And Judge Hanna did not misrepresent or misinterpret the ALJ's opinion—the ALJ noted that Tammie herself reported possessing Norco. *See, e.g.*, *id.* at 30 ("Although [Tammie] had been taken off Norco previously, the claimant reported using Norco, including her having a stock pile of Norco and this is not prescribed for her." (quotation marks omitted)). Tammie's statement that she "NEVER took Norco that was not prescribed," Obj. R&R 22, is contradicted by the record. R. 757 (acknowledging that she saved up pills after she was supposed to wean off Norco and takes them occasionally).

**5. Doctor's Note**

Judge Hanna next addresses Tammie's argument that she could not work during the relevant time period because she possessed a doctor's note which said she could not work. R&R 22. Judge Hanna recommends rejecting this argument as a basis for remand because the determination of whether Tammie was disabled lies exclusively with the Commissioner. *Id.* Tammie objects to the whole paragraph, arguing that Judge Hanna and the ALJ's not considering a specialist's off work note is cherry picking and "playing doctor." Obj. R&R 24. Tammie's objection is frivolous. Judge Hanna's recommendation states the law, with which the Court agrees, that the Commissioner does not need to accept that Tammie was disabled simply because a doctor's note states she was. *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. § 404.1527(e)).

**6. Daily Activities**

Judge Hanna next addresses Tammie's argument that the ALJ did not explain how her ability to complete certain ADLs supports the conclusion that she was not disabled. R&R 22–23. He recommends overruling this objection because consideration of ADLs is a relevant factor in determining her RFC. *Id.* Tammie objects to the whole paragraph, arguing that (1) the ALJ mischaracterized her ADLs and (2) even as her ADLs are characterized, "they do not equal light duty full time work requirements." Obj. R&R 24–25. The Court has already addressed and rejected these objections. *See supra* Section II(e)(i). And the ALJ concluded Tammie could perform light duty, full time work, with some additional restrictions, based upon her review of the entire record, not just because of Tammie's activities of daily living. That Tammie disagrees with the conclusion reached by the ALJ is, once again, totally irrelevant. The ALJ's decision was logical, explained, and based upon substantial evidence.

**7. Medical Opinions**

Judge Hanna next addresses Tammie's objection that the ALJ arbitrarily weighed medical opinions, recommending the Court reject this argument because the ALJ discussed the relevant medical opinions, the record, and explained why she assigned the opinions their respective persuasive value. R&R 23–24. Tammie objects to the paragraph as a whole for several reasons, the overarching theme of which being that Judge Hanna "erred when he admitted that the ALJ denied [Tammie's] claim because she believes [Tammie is] a malingerer." Obj. R&R 25–26. Tammie argues that the ALJ cannot ignore or manipulate evidence in order to further her own personal theory that Tammie is a malingerer. *Id.* at 25. It is true that an ALJ cannot manipulate evidence to promote personal theories; however, the ALJ here did not do so. She reviewed the evidence, pointed out inconsistencies and noted where providers raised concerns about the motivation behind Tammie's complaints, and chose to credit those inconsistencies. *See* R. 31. This conclusion was supported by substantial evidence, although Tammie argues it was not because only Burgard called Tammie a malingerer. Obj. R&R 25.

Tammie claims the ALJ gave too much weight to this one practitioner's opinion when compared with all the other practitioners, tests, and evidence in the medical record. *Id.* Tammie's argument is simply false. Multiple of her providers noted concerns sounding in malingering, although Burgard's notes are the only ones containing the word "malinger." Dr. Sonal Singh wrote: "Patient mentioned several times during visit she wants to be diagnosed with everything she can for her disability. She mentioned diagnosis of fibromyalgia several times. I discussed with her she has history of chronic pain and I am not able to diagnose her with fibromyalgia just for disability purposes and these diagnoses do not coincide with each other." R. 840. Licensed social worker and certified alcohol and drug counselor Amy Shanahan noted:

"I don't see a significant impairment (psychological or emotional) that would preclude [Tammie] from working or going back to school. She is intelligent, articulate and able to navigate current legal issues." *Id.* at 960. She continued on, noting that "[a]ccording to Tammie she has a better chance of getting SSI with both a medical and psychological disability," and that "[e]very suggestion I made was countered with reasons why she can't work or go to school." *Id.* at 960. Dr. Gayle Williamson, who prepared the Disability Determination Explanation, reached the same conclusion as the ALJ, commenting that "[t]he claimant's statements are not consistent in light of the medical findings cited above. The claimant's description of the severity of her impairments is extreme and unsupported by the medical and other evidence of record." *Id.* at 215.

The ALJ found the state agency medical consultants' opinions "not that persuasive because they are inconsistent with the providers notes about the claimant not needing a cane, being a malingerer, and refusing treatment, as well as there being gaps in treatment." *Id.* at 39–40. Judge Hanna cites this as a time the ALJ "examined the medical opinions appropriately." R&R 24. Tammie argues that no providers, not even Burgard, noted that Tammie did not need a cane or refused treatment, and so challenges the evidentiary sufficiency of the ALJ's determination that the medical consultants' opinions were unpersuasive. Obj. R&R 26. This argument fails. The Court has already discussed the evidence about Tammie's need for a cane, *see supra* Section II(d)(i), and only repeats here that it was not an error for the ALJ to interpret Burgard's comments that Tammie did not seem to rely on the cane much and used it more for support than assistance as meaning that there was no medical necessity for the cane. The Court has also already discussed the evidence of Tammie's rejection of treatment and medication and her failure to regularly seek treatment. *See supra* Section II(e)(ii)(4). The Court sees no error in

the ALJ's reliance on this medical record evidence to discount the state agency medical consultants' opinions.

**8. Fibromyalgia**

Next, Judge Hanna addresses miscellaneous arguments raised by Tammie about ways in which the ALJ erred in evaluating her fibromyalgia. R&R 24–25. He recommends overruling her objection because the ALJ's determination was supported by substantial evidence. *Id.* Tammie objections to the whole paragraph, *see* Obj. R&R 27; however, the arguments raised here merely repeat those already addressed elsewhere. As such, the Court will not address them again here.

**9. Remaining Challenges**

Finally, Judge Hanna addresses Tammie's remaining disagreements with the way the ALJ chose to weigh and interpret the record, which he recommends rejecting because "claimants cannot simply point to evidence the ALJ considered and rejected and ask th[e] court to infer greater limits from it." R&R 25–26 (quoting *Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at *5 (7th Cir. Mar. 16, 2023)). Tammie objects to the whole paragraph, *see* Obj. R&R 27, but this too repeats arguments already exhaustively raised elsewhere in her objection. The Court will not again review them here.

**f. Motion for Leave to File Excess Pages**

For the first time, Tammie objects to Judge Hanna's denial of her motion for leave to file excess pages when initially briefing this case. *Id.* at 29. In order to appeal a non-dispositive order from a magistrate judge, the appeal must be made within fourteen days of service of the order. Civil LR 72.2(A). Judge Hanna denied Tammie's motion for leave to file excess pages on January 6, 2026. *See* Jan. 6, 2026 Text Order. She did not appeal or raise any objection to

this order until she filed these objections in mid-June. This is clearly past fourteen days of service and so the objection is overruled.

**CONCLUSION**

Accordingly, Plaintiff Tammie F.'s objection, ECF No. 21, is OVERRULED and Magistrate Judge Ronald L. Hanna's Report and Recommendation, ECF No. 20, is ADOPTED. The Commissioner's decision denying Tammie benefits is AFFIRMED. The Clerk is directed to enter judgment and close the case.

Entered this 28th day of September, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE